IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 24-cv-03313-CNS-SBP

KENT THIRY, individually,
DENISE O'LEARY, individually, and the
THIRY O'LEARY FOUNDATION,

    Plaintiffs,

v.

ROBERT P. GEHLEN, individually, and
DAVID MUCHA, individually,

    Defendants.

## ORDER

Before the Court is Defendants' Robert Gehlen and Davis Mucha (Defendants') Motion to Compel Arbitration and Dismiss Claims. ECF No. 9. Plaintiffs Kent Thiry, Denise O'Leary, and the Thiry O'Leary Foundation (collectively Plaintiffs) filed a response opposing the motion. ECF No. 11. Defendants filed a reply. ECF No. 21. The Court granted leave for Plaintiffs to file a surreply. ECF No. 25. The Court has reviewed the parties' briefs and relevant authority. For reasons set forth below, the Court GRANTS the motion as to Kent Thiry and Denise O'Leary, DENIES the motion as to the Thiry O'Leary Foundation, and STAYS Thiry and O'Leary's claims in this action pending arbitration of them.

1

## I. BACKGROUND[1]

Kent Thiry and Denise O'Leary jointly operate the Thiry O'Leary Foundation (the Foundation). ECF No. 9 at 1. Plaintiffs engaged First Republic Investment Management, part of First Republic Bank (collectively First Republic), for advisory and management services. *Id.* at 2. Defendants, as employees of First Republic, provided investment services to Thiry and O'Leary. *Id.* Thiry and O'Leary entered into an Investment Management Agreement (IMA) with First Republic containing an arbitration agreement providing that

> Any dispute or controversy between Advisor, or its affiliates, and Client, or its agents, arising out of or related to Advisor's business or this Agreement, which cannot be resolved by negotiation, shall be submitted to arbitration in accordance with and subject to the Commercial Dispute Resolution procedures of the American Arbitration Association.

ECF No. 21-1 at 4.[2] Defendants contend that the Foundation also signed an IMA but no such agreement has been produced. ECF No. 25 at 9.

During the engagement with First Republic, Defendants advised Plaintiffs to keep large amounts of capital uninvested. ECF No. 1 (Compl.), ¶ 2. However, Plaintiffs allege that Defendants also failed to disclose the personal benefits they stood to receive from Plaintiffs' uninvested capital. *Id.*, ¶ 4. Defendants allegedly also failed to inform Plaintiffs that, because their holdings exceeded the Federal Deposit Insurance Corporation (FDIC) limit, much of their capital was uninsured. *Id.*, ¶¶ 30–31.

---

[1] The background facts are taken from materials submitted in connection with the parties' briefing, which also includes references to allegations in the complaint. *Vaughn v. JP Morgan Chase & Co.*, 707 F. Supp. 3d 1042, 1055 n.1 (D. Colo. 2023).

[2] The parties' dispute regarding this IMA is discussed further below.

First Republic went bankrupt on May 1, 2023. *Id.*, ¶ 38. At that time, Plaintiffs' accountant discovered the alleged mismanagement by Defendants. *Id.*, ¶¶ 39–41. Plaintiffs soon after brought this suit alleging statutory violations of the Investment Advisors Act, the Colorado Securities Act, and common law claims stemming from Defendants' alleged mismanagement of their investments. ECF No. 1.

## II.   LEGAL STANDARD

Under the Federal Arbitration Act (FAA), contractual agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided." 9 U.S.C. § 2. The FAA expressly permits a party to petition a federal district court to compel arbitration. 9 U.S.C. § 4.

Federal policy generally favors arbitration of disputes, *Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004), but because "arbitration is a matter of contract[,] a party cannot be required to submit to arbitrate any dispute which [that party] has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation and quotations omitted). Indeed, arbitration agreements are generally treated like all other contracts. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (explaining that the FAA's "policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules") (citation and quotations omitted).

Whether to enforce an arbitration agreement requires a court to employ a two-step process. First, a court must determine whether the moving party proves that there is an

3

agreement providing them with the right to compel arbitration. *See Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018) ("First . . . we determine whether there was an agreement, and whether the agreement provided the moving entity . . . with the right to compel arbitration") (internal citation omitted). Second, a court determines whether the moving party proves that the allegations in the complaint are within the scope of the arbitration provision. *Id.* ("Second, if the parties had an agreement that provided the moving party with the right to compel arbitration, then we must analyze whether the facts at issue—i.e., the allegations in the complaint—are within the scope of the arbitration agreement.") (internal citation omitted). Courts must give the party opposing the motion to compel arbitration the benefit of all reasonable doubts and inferences. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

### III.   ANALYSIS

#### A. Defendants Have Not Met Their Burden of Production as to an Arbitration Agreement Between First Republic and the Foundation

The party seeking to compel arbitration bears the burden of demonstrating that a valid arbitration agreement exists. *Hancock*, 701 F.3d at 1261. When the parties dispute the validity of an agreement to arbitrate, "a court may grant a motion to compel arbitration if there are no genuine issues of material fact regarding the parties' agreement." *Id.* (citation and quotations omitted).

At the time Defendants filed their motion, they did not provide any IMAs signed by the parties because they represented that JP Morgan Chase had control over First

Republic's documents.[3] ECF No. 9 at 2. Then, in their reply, Defendants produced the IMA entered into with Thiry and O'Leary, but not the IMA entered into with the Foundation.[4] ECF No. 21 at 2; ECF No. 25 at 2. Because Defendants did not meet their burden of production as to an arbitration agreement with the Foundation, Defendants' motion is denied as to the Foundation. *See Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1257 (D. Colo. 2019) ("The party seeking arbitration must present sufficient evidence demonstrating the existence of an arbitration agreement."). The Foundation cannot be compelled to arbitrate in the absence of an agreement to do so.

Having addressed the motion as to the Foundation, the Court proceeds with a discussion of the motion as applied to Plaintiffs.

### B. The Court Will Consider the Arguments and Evidence Defendants Raised in Their Reply

In their surreply, Plaintiffs assert that Defendants waived their ability to rely on the IMAs and to argue that the Court should use New York law given, Plaintiffs contend, that Defendants raised the issue "for the first time" in their reply. ECF No. 25 at 1–2. Once Defendants acquired the IMA between First Republic and Thiry and O'Leary, and cited the arbitration agreement portion in their reply brief, the Court granted Plaintiffs leave to file a surreply. ECF No. 24. Although the parties dispute whether Defendants formally raised the choice of law issue in the reply, the Court need not address that dispute because the surreply allowed both parties to fully develop their choice of law arguments.

---

[3] Defendants represent that JP Morgan Chase's acquisition of First Republic from the FDIC limited their ability to access documents. ECF No. 9 at 2.

[4] The IMA entered into with Thiry and O'Leary is discussed further below.

5

*See Navajo Health Found.-Sage Mem'l Hosp., Inc. v. Burwell*, 110 F. Supp. 3d 1140, 1186 n.50 (D.N.M. 2015) ("Because the Court granted the Motion to File Surreply . . . and has considered the information in the arguments that the Defendants set forth in the [Motion for Summary Judgment] Surreply, the Defendants have had a full opportunity to respond to Sage Hospital's arguments in the . . . Reply, and the Court may consider this argument."); *Nat'l Urban League v. DeJoy*, No. 20-2391-GLR, 2020 WL 6363959, at *9 n.7 (D. Md. Oct. 29, 2020).

Having dispensed with Plaintiffs' arguments as to whether the Court can consider Defendants' arguments contained in their reply brief, the Court turns now to the merits of the parties' arbitration arguments.

### C. The Court Will Apply New York Law

The parties dispute whether New York or Colorado law governs the Court's interpretation and analysis of the scope of the arbitration agreement. ECF No. 21 at 2–3; ECF No. 25 at 2. Defendants argue that the Court should apply relevant New York and federal law in accordance with the IMA's choice of law provision.[5] ECF No. 21 at 2. Plaintiffs counter that Colorado law is proper. ECF No. 25 at 2. The Court agrees with Defendants.

As a preliminary matter, in advancing their argument, Plaintiffs rely on case law addressing contract *formation*, not the scope of arbitration agreements and whether such

---

[5] The choice of law provision in the contract provides that "[t]his Agreement will be governed by federal law and, except to the extent preempted thereby, the internal laws of the State of New York (without regard to any principles or conflicts of law)." ECF No. 21-1 at 4.

agreements compel a party to arbitrate a specific dispute, which is the core issue Defendants' motion raises. ECF No. 25 at 2; *see also B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 661 n.9 (10th Cir. 2006) (noting there is a "logical flaw inherent in applying a contractual choice of law provision before determining whether the underlying contract is valid."); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the *contract formation* issue would presume the applicability of a provision before its adoption by the parties has been established.") (citation omitted) (emphasis added). Accordingly, the Court rejects Plaintiffs' *formation* argument on this basis, given especially that the parties' arguments reveal that they dispute how to interpret the IMA and whether Thiry and O'Leary should be compelled into arbitration based on it, not whether it was validly formed.

While the FAA governs enforcement of an arbitration agreement, state contract law governs the scope of an agreement. *See Reeves v. Enter Prods. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021) (observing that the "scope of the arbitration agreement, including the question of who it binds, is a question of state contract law") (citation omitted). Because there is a valid contract entered into between the parties, the Court applies New York law in its analysis of Defendants' motion, consistent with the IMA's plain language. ECF No. 21-1 at 4.[6]

---

[6] In advancing their argument that the Court should apply Colorado law, Plaintiffs ask the Court to consider the Restatement's "most significant relationship" test adopted by Colorado. ECF No. 25 at 2–3. However, the Court does not find consideration of the Restatement approach necessary because there exists a valid contract in which the parties unambiguously agreed to be bound by New York law. *See* ECF No. 21-1 ("This Agreement will be governed by federal law and, except to the extent preempted thereby, the internal laws of the State of New York (without regard to any principles or conflicts of law)."); *see also Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 427–28 (10th Cir. 2006) ("To begin with, when a court interprets a contract, as a general matter it applies the law that the parties selected in their contract.") (citing Restatement (Second) Conflict

### D. The Arbitration Agreement Covers Defendants

Plaintiffs argue that the arbitration agreement does not cover Defendants as non-signatories because there is no intent to include them in the agreement. ECF No. 25 at 1. Defendants counter that the arbitration agreement includes employees of First Republic, including Defendants. ECF No. 21 at 2. The Court agrees with Defendants.

Courts frequently recognize agency as a theory under which a non-signatory may be bound by an arbitration agreement. *See, e.g.*, *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9–10 (1st Cir. 2014) (observing a "non-signatory to the contract may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract" and then "appl[ying] New York State law [to] interpretation of the contract") (internal quotation omitted); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) ("[E]mployees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement"); *Hirschfeld Prods. v. Mirvish*, 673 N.E. 2d 1232, 1233 (N.Y. 1996) ("The Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or

---

of Laws § 187)); *Murray v. Crawford*, No. 08-cv-02045-KMT-KLM, 2009 WL 1837445, at *2 (D. Colo. June 26, 2009) ("Trumping the [Restatement] test, however, is the overarching default position in a contract dispute that federal courts should apply the law chosen by the parties in their contract."); *Kipling v. State Farm Mut. Auto. Ins. Co.*, 159 F. Supp. 3d 1254, 1266 n.3 (D. Colo. 2016) ("Under most circumstances, [the contractual choice-of-law provision] may obviate the need to consider which state has the most significant relationship to the transaction and the parties."). The Court notes that regardless, and discussed further below, the relevant laws of New York and Colorado are substantially similar as to how courts should analyze arbitration agreements, such that the application of either state's law would result in the same outcome: compelling Thiry and O'Leary to arbitration.

8

in their capacities as agents of the corporation.") (internal citations omitted).[7] Pertinently, and consistent with this weight of authority, under New York law, "an agent is entitled to the protection of [their] principal's arbitration clause when the claims against [them] are based on [their] conduct as an agent." *Grand Wireless*, 748 F.3d at 11; *see also Hirschfeld*, 673 N.E. 2d at 1233; *Huntsman Int'l LLC v. Albemarle Corp.*, 163 A.D.3d 420, 421 (N.Y. App. Div. 2018) ("[E]mployees . . . are nevertheless entitled to enforce the arbitration provision, because any breach of the [contract] would have to be the result of an action or inaction attributable to them."). This rule "is necessary not only to prevent circumvention of arbitration agreements but also to effectuate the intent of the signatory parties to protect individuals acting on behalf of the principal in furtherance of the agreement." *Id.* (quotations omitted).

In urging that the IMA's arbitration agreement does not reach their claims against Defendants, Plaintiffs advance two primary arguments. Both arguments fail.

First, Plaintiffs argue that Defendants' only avenue for compelling arbitration as a non-signatory is as an intended beneficiary. ECF No. 25 at 7. However, New York law, which the Court must apply, recognizes other theories, including agency, under which a non-signatory can enforce an arbitration agreement. *See, e.g., Merrill Lynch Int'l Fin., Inc. v. Donaldson*, 895 N.Y.S.2d 698, 702–03 (N.Y. Sup. Ct. 2010) (recognizing "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/'alter ego'; and

---

[7] As noted above, Colorado law does not govern this dispute, given the IMA's plain language, but nonetheless the legal rules in Colorado and New York regarding theories of agency and the arbitration of disputes is substantially similar, such that even application of Colorado law would lead to arbitration. *See N.A. Rugby Union LLC v. United States of America Rugby Football Union*, 442 P.3d 859, 863–64 (Colo. 2019) (recognizing agency as an accepted theory "for binding a nonsignatory to an arbitration agreement").

(5) estoppel" as theories by which a non-signatory may be bound by an arbitration agreement (citing *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995))). Discussed further below, Defendants, as employees, were agents of First Republic and therefore received the protection of their principal and employer's arbitration agreement. *See* ECF No. 21 at 5 ("Defendants are protected by the IMA's arbitration clause due to their former position as employees and agents of First Republic." (citing *Roby v. Corp. of Lloyd's*, 996 F.2d at 1360 (internal citation omitted))).

Next, as a matter of contract interpretation, Platintiffs argue that the IMA shows an intent to exclude Defendants as agents. ECF No. 25 at 5–6. Plaintiffs point to two provisions in the contract as evidence of intent to exclude Defendants as agents. First, Plaintiffs note that the arbitration agreement includes the Client's agents but not the Advisor's agents. ECF No. 11 at 10; *see also* ECF No 21-1 at 4 ("Any dispute or controversy between Advisor, or its affiliates, and Client or its agents . . ."). Plaintiffs contend that the "deliberate exclusion demonstrates that the parties did not intend for the IMA to apply to claims against past or present agents or employees." ECF No. 11 at 10. Second, Plaintiffs point to the IMA's Terms and Conditions, which expressly includes "employees and agents." ECF No. 11 at 10; *see also* ECF No 21-1 at 9 ("Advisor and its affiliates, related parties, principals, employees and agents . . ."). Plaintiff insists that "inclusion of contract terms in one provision demonstrated the intent of parties not to include such terms in other provisions." ECF No. 25 at 4–5. The Court does not find these arguments persuasive and rejects them.

10

Indeed, Plaintiffs fail to contend with a line of authority in which New York courts rejected a similar argument and compelled arbitration. *See Dunmire v. Hoffman*, No. 05 CIV. 4852, 2006 WL 2466248, *3 (S.D.N.Y. Aug. 24, 2006); *Dunmire v. Lee*, 831 N.Y.S.2d 831, 833 (N.Y. Sup. Ct. 2006). In the *Dunmire* cases, Delbert Dunmire engaged Morgan Stanley (and its predecessor firm) as a broker. *See, e.g., Dunmire*, 2006 WL 2466248, at *1. As part of this relationship, Dunmire signed three separate client agreements in 1989, 1999, and 2000, each containing an arbitration agreement. *Id.* at *1–2. The first two agreements expressly included the firm's employees and agents in the arbitration agreement, while the 2000 agreement did not include such language. *See Dunmire v. Schneider*, 481 F.3d 465, 68 (7th Cir. 2007) ("Until 2000 arbitration agreements between Morgan Stanley and its customers specifically covered claims against the firm's employees as well. That language was dropped in 2000 . . . ."). Dunmire sued three individual Morgan Stanley employees in three separate courts. *See Dunmire*, 2006 WL 2466248; *Dunmire*, 481 F.3d 465; *Dunmire v. Lee*, 831 N.Y.S.2d 831.

In each suit, Dunmire advanced similar arguments to those advanced by Plaintiffs here. For example, in the Southern District of New York, Dunmire contended that the 2000 agreement excluding employees and agents in its arbitration language but including them elsewhere evinced intent to exclude non-signatory employees from arbitration. *Dunmire*, 2006 WL 2466248, at *3. The court rejected this argument. *Id.* at *4 ("Defendant shall not be deprived of an arbitration simply because the 2000 Agreement did not explicitly include the precise words 'agents, representatives, or employees.'"). A New York state court, confronted with the same argument, reached a virtually identical

11

conclusion. *Dunmire*, 831 N.Y.S.2d at 833 ("This court agrees with the holding by the federal courts whereby they found that Morgan Stanley employees should not be deprived of the presumption that employees may invoke the benefit of his/her employers' arbitration agreement . . . ."). *Id.*

The Court finds the reasoning of these cases persuasive, and entirely consistent with the general rule under New York law that employees are "entitled to enforce [a contract's] arbitration provision." *Huntsman*, 163 A.D.3d at 421. The arbitration agreement covers Defendants, as employees and agents of First Republic, regardless of whether the arbitration agreement explicitly mentions them. *See id.* Similar to the 2000 agreement in the *Dunmire* cases, *see, e.g., Dunmire*, 2006 WL 2466248, the agreement between Thiry and O'Leary and First Republic requires arbitration between "[a]dvisor, or its affiliates, and Client, or its agents." ECF No. 21-1 at 4. This is sufficient to cover Defendants as employees and agents. Accordingly, the Court rejects Plaintiffs' argument and agrees with Defendants that the arbitration agreement covers them as non-signatory employees.

Plaintiffs also contend that the arbitration agreement does not apply to former employees of a dissolved company. ECF No. 25 at 8. Defendants assert that the arbitration agreement encompasses them "due to their former position as employees and agents of First Republic." ECF No. 21 at 5. Defendants further argue that the arbitration agreement covers any "dispute or controversy . . . arising out of or related to Advisor's business or this Agreement." ECF No. 21 at 8 (citing arbitration agreement). The Court agrees with Defendants. As discussed prior, the alleged violations stem from Defendants'

conduct *while employed* by First Republic. Nothing in the agreement suggests that the parties intended to terminate the arbitration protections just because Defendants ceased employment. To the contrary, the agreement provides that the "terms of this arbitration section shall survive the termination of this Agreement." ECF No. 21-1 at 5.

### E. The Arbitration Agreement Covers the Scope of Defendants' Actions and therefore Thiry and O'Leary's Claims Against Defendants

The second step of the Court's inquiry requires assessing whether Defendants' conduct giving rise to Plaintiffs' claims falls within the scope of the IMA arbitration agreement. *See Cavlovic*, 884 F.3d at 1057. Defendants contend that, as "the individuals [who provided] the actual financial advisory services to Plaintiffs," all of Plaintiffs' claims "arose out of alleged actions taken by Defendants in the course of their employment at First Republic." ECF No. 9 at 6. The Court agrees. The arbitration agreement provides that "[a]ny dispute or controversy between Advisor, or its affiliates, and Client, or its agents, arising out of or related to Advisor's business or this Agreement, which cannot be resolved by negotiation, shall be submitted to arbitration . . . ." ECF No. 21-1 at 4. At bottom, the Court agrees with Defendants that all of the allegations in Plaintiffs' Complaint, as well as Plaintiffs' claims, "arise out of or relate to First Republic's investment advisory business and investment management services." ECF No. 9 at 5. Accordingly, Plaintiffs' claims against Defendants fall under the IMA's arbitration agreement, and those claims are properly compelled into arbitration.

## IV.  CONCLUSION

Consistent with the above analysis, the Court orders as follows:

1. Defendants' Motion to Compel Arbitration at ECF No. 9 is GRANTED as to individual Plaintiffs Kent Thiry and Denise O'Leary.

2. Defendants' Motion to Compel Arbitration at ECF No. 9 is DENIED as to Plaintiff Thiry O'Leary Foundation.

3. Claims involving Plaintiffs Thiry and O'Leary are hereby STAYED. Because the Court grants the Motion to Compel Arbitration, and both parties requested a stay pending arbitration, the Court must order a stay. *Smith v. Spizzirri*, 144 S. Ct. 1173, 1176 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.").

Dated this 28th day of August 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge